Isadora S. Moufang et al., Respondents, *v.* State of New York, Appellant.

Argued November 20, 1945; decided January 17, 1946.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Herbert A. Einhorn and Mortimer H. Michaels* of counsel), for appellant. I. The statutes applicable to the facts have clearly indicated at all relevant times that there was no duty of investment of court funds after their transfer to the State Treasury. (State Finance Law, § 84, subd. 1; Code Civ. Pro., §§ 743–754; L. 1892, ch. 651, § 9; State Finance Law, § 44, as added by L. 1909, ch. 58, as amd. by L. 1933, ch. 217.) II. The Legislature has full power over the investment of court funds. (*People* v. *Keenan,* 110 App. Div. 537, 185 N. Y. 600; *Matter of City of New York,* 200 N. Y. 138; *Schwartz* v. *Kutsher,* 176 Misc. 815; *McBride* v. *State of New York,* 110 Misc. 64.) III. There was no breach of trust. (*McBride* v. *State of New York,* 110 Misc. 64.) IV. The termination of interest when funds are transferred into the State treasury is in conformity with the general policy governing unclaimed or abandoned funds. (*Brooklyn Borough Gas Co.* v. *Bennett,* 154 Misc. 106.) V. The State's power over funds of this nature is supreme and

violates no vested rights or constitutional limitations. (*Provident Institution for Savings* v. *Malone,* 221 U. S. 660; *Security Savings Bank* v. *California,* 263 U. S. 282; *Anderson National Bank* v. *Luckett,* 321 U. S. 233; *Brooklyn Borough Gas Co.* v. *Bennett,* 154 Misc. 106; *Malone* v. *Provident Institution for Savings,* 201 Mass. 28; *Commonwealth* v. *Dollar Savings Bank,* 259 Pa. 138; *Germantown Trust* v. *Powell,* 265 Pa. 71.) VI. The State Comptroller is under no duty, and is without power, to invest the funds claimed by the respondents, and is, therefore, under no obligation to pay interest thereon. (*Dunham* v. *Ottinger,* 243 N. Y. 423; State Finance Law, § 81; *McBride* v. *State of New York,* 110 Misc. 64.) VII. The authorities relied upon by the courts below and cited in respondents' point I, do not support the claim.

*Andrew F. Van Thun, Jr.,* and *Frank A. Kister* for respondents. I. Upon the transfer of the fund to the State treasury, the State Comptroller, *ex officio,* became a trustee of said fund charged with the duty, under the final decree entered in 1894, to invest the same and accumulate the income thereon during the lifetime of Isadora E. Mangles for the benefit of her surviving children. (State Finance Law, §§ 44, 81; L. 1909, ch. 58; *Matter of Spaulding* v. *Arnold,* 125 N. Y. 194; *People* v. *Keenan,* 110 App. Div. 537, 185 N. Y. 600; *Matter of Sohmer,* 156 App. Div. 781; *Mills* v. *Bluestein,* 275 N. Y. 317; *Society Milion Athena* v. *Nat. Bk. of Greece,* 281 N. Y. 282; *Locke* v. *Pembroke,* 280 N. Y. 430; *Matter of People* v. *Maltbie,* 184 App. Div. 743, 226 N. Y. 641; *Matter of Walsh,* 204 N. Y. 276; *Matter of City of New York,* 200 N. Y. 138; *People ex rel. Evans* v. *Chapin,* 101 N. Y. 682.) II. Section 44 of the State Finance Law, as construed by the State, would, in effect, render null the final decree of February 7, 1894, from the time of the transfer of the fund to the State treasury so far as investment of and income from the fund are concerned. Such a construction constitutes an encroachment upon the inherent power of the Supreme Court over its judgments. (*De Hart* v. *Hatch,* 3 Hun 375; *People ex rel. Mayor* v. *Nichols,* 79 N. Y. 582; *Gilman* v. *Tucker,* 128 N. Y. 190; *People ex rel. Swift* v. *Luce,* 204 N. Y. 478; *Matter of Schmidt* v. *Chamberlain of N. Y.,* 266 N. Y. 225; *Matter of Lyons* v. *Goldstein,* 290 N. Y. 19; *Decker* v. *Canzoneri,*

256 App. Div. 68; *Chesterman* v. *Eyland,* 81 N. Y. 398.) III. Claimants had vested rights under the decree of 1894. The duration of the investment of and their title to the fund were fixed by the decree and beyond the power of the Legislature to abridge or destroy. (*Gilman* v. *Tucker,* 128 N. Y. 190; *Matter of Greene,* 166 N. Y. 485; *Livingston* v. *Livingston,* 173 N. Y. 377; *Waddey* v. *Waddey,* 290 N. Y. 251.) IV. The transfer effected a change of depository only and the comptroller thereupon became the depositary of the fund, subject to the mandate of the final decree that the same be invested during the life of Isadora E. Mangles and the income thereon accumulated for the benefit of her surviving children. (*People* v. *Keenan,* 110 App. Div. 537, 185 N. Y. 600; *Matter of Sohmer,* 156 App. Div. 781; *Matter of Spaulding* v. *Arnold,* 125 N. Y. 194.) V. It was the duty of the comptroller as trustee of this fund profitably to employ the same while in his hands under penalty of personal liability for his neglect so to do. (*Rapalje* v. *Hall,* 1 Sandf. Ch. 399; *Matter of Barnes,* 140 N. Y. 468; *Price* v. *Holman,* 135 N. Y. 124; *King* v. *Talbot,* 40 N. Y. 76; *Matter of Muller,* 31 App. Div. 80; *Matter of Ayvazian,* 153 Misc. 467.) VI. The State is liable for the breach of trust by the comptroller in this instance. The Court of Claims has exclusive jurisdiction of this claim. (Court of Claims Act, L. 1939, ch. 860; *Breen* v. *Mortgage Commission,* 285 N. Y. 425; *Adler, Inc.,* v. *Noyes,* 285 N. Y. 34.)

THACHER, J. The Appellate Division, third department, has affirmed an order of the Court of Claims granting respondents' motion for leave to file a claim against the State, and the appeal is here upon the following certified question: " Does the proposed claim of the respondents state facts sufficient to constitute a cause of action? "

The claim is for damages for failure to invest and keep invested moneys paid into court pursuant to a final decree of the Supreme Court, County of Kings, which was entered February 7, 1894, in a partition action brought by Harry C. Hallenbeck and Elizabeth C. Hallenbeck, his wife, against Annette M. Hallenbeck and other defendants. Pursuant to this decree there was deposited with the Treasurer of the County of Kings $1,753.34, which the decree required to be kept invested during

the life of Isadora E. Mangles " for the benefit of her surviving children, the interest thereon to be accumulated, and the whole to be disposed of among the surviving children of said Isadora E. Mangles upon her decease as may be hereafter directed by this Court ".

Under the Greater New York Charter the custody of this fund devolved upon the Chamberlain of the City of New York, who, on July 1, 1932, transferred to the Treasurer of the State of New York the sum of $6,233.16 representing the original deposit of $1,753.34 with accumulations to that date, all in accordance with the requirements of section 44 of the State Finance Law. The claimants are the sole surviving children of Isadora E. Mangles, who died on March 16, 1943.

In a proceeding pursuant to sections 136 and 137 of the Civil Practice Act entitled in the *Hallenbeck* action, claimants obtained an order entered in the Kings County Clerk's office on June 20, 1944, directing the State Comptroller to pay to them the sum of $6,233.16. This order contained the following provision: " ORDERED, that, the Court not having considered the liability of the Comptroller of the State of New York and of the State of New York or either of them arising out of the failure and neglect, if any, of the said Comptroller to invest said fund, or any part thereof since the date of the transfer of said fund to the State Treasurer on or about July 1st, 1932, this application and order be and hereby are without prejudice to any claim or right which said petitioners [naming the claimants] or either of them may have or claim to have against the Comptroller of the State of New York and the State of New York or either of them arising out of the failure and neglect, if any, of the Comptroller of the State of New York to invest said fund as aforesaid."

Under this reservation the claimants contend that, in addition to the sum actually received by the State Treasurer and repaid to them, they are entitled to recover in the Court of Claims damages resulting from the failure of the State Comptroller to keep the fund invested. Jurisdiction of the Court of Claims to determine the sufficiency of the claim is predicated upon alleged wrongful acts of officials of the State acting as such (see Court of Claims Act, § 9, subd. 2).

Authority to invest money paid into court, originally governed by rule 180 of the Rules and Orders of the Court of Chancery as revised and established in 1837, has since been defined by statute (L. 1892, ch. 651; Code Civ. Pro., § 747; Civ. Prac. Act, § 136). The force of the decree directing that the fund be kept invested is not questioned so long as the fund remained in the hands of the Treasurer of Kings County or of the Chamberlain of the City of New York, but the State contends that the order did not become binding upon it when the City Chamberlain transferred the fund to the Treasurer of the State pursuant to section 44 of the State Finance Law (L. 1909, ch. 58). By that statute, both in its original form (L. 1892, ch. 651, § 9) and as it appeared in the State Finance Law (L. 1909, ch. 58), court funds remaining in the hands of any county treasurer or Chamberlain of the City of New York for twenty years were required to be paid over by such officer " with all accumulations of interest thereon ", and the direction of the statute was that the State Treasurer " shall pay such sum " to the owner or owners thereof upon presentation of the warrant of the comptroller therefor. The comptroller was in turn directed to issue his warrant " for such sum " upon the presentation of an order of the court made in accordance with section 751 of the Code of Civil Procedure (now § 137 of the Civil Practice Act) and upon due notice to the comptroller. Thus the mandate of the statute was to pay the sum originally received and nothing more. The order made in the proceedings under section 137 followed this requirement of the statute and directed payment of the sum originally transferred by the City Chamberlain to the State Treasurer. It seems to be assumed that nothing more could have been required under the statute, but it is contended that the failure to invest the fund in accordance with the decree entered in the partition action in 1894 gives rise to a cause of action for damages which may be brought against the State in the Court of Claims. There was no direction in the statute requiring investment by the officers of the State, and the direction of payment back to the owners of the sum received by the State, without interest or other accumulations, precludes the imposition upon the officers of the State of any duty to invest. Thus stood the law when the decree was entered in 1894 and when the fund was trans-

ferred to the State. The decree could not change or annul the statute. The decree must accordingly be limited so as to read in harmony with the statute as providing for investment only during the twenty years and so long thereafter as the County Treasurer or any officer upon whom his duties devolved (in this case the City Chamberlain) continued to hold the fund. When the transfer was made to the State Treasurer, the duties of the State were defined by the statute and no duty to keep the fund invested was imposed.

In behalf of the claimants it is contended that they had vested rights under the decree of 1894, including the provision that the fund should be kept invested during the life of their mother, and that this provision of a judicial decree was beyond the power of the Legislature to abridge or destroy. This statute did not confiscate or put again in jeopardy property rights established by judgments already obtained, as in such cases as *Matter of Greene* (166 N. Y. 485); *Gilman* v. *Tucker* (128 N. Y. 190, 204); *Livingston* v. *Livingston* (173 N. Y. 377), and *Waddey* v. *Waddey* (290 N. Y. 251). It was within the power of the Legislature to provide for the custodial care and protection of funds paid into court for many years unclaimed by their owners and to require that after a lapse of twenty years or more such funds should be taken into the custody of the State. The validity of such statutes affecting funds unclaimed for twenty years or more cannot be doubted (*Provident Savings Institution* v. *Malone,* 221 U. S. 660; *Security Bank* v. *California,* 263 U. S. 282; *Anderson Nat. Bank* v. *Luckett,* 321 U. S. 233; *Brooklyn Borough Gas Co.* v. *Bennett,* 154 Misc. 106, 115–117). Whether or not the State shall keep such funds invested or credit interest thereon, and if so at what rate, are questions of policy to be determined by the Legislature. The point is made that under the decree of 1894 the claimants had no right to claim these funds until after their mother's death and that this case should be distinguished from the cases cited upon that ground, but we find in this distinction nothing to impair the legislative power to take such funds into the custodial care of the State in order to secure their safety and protection. This purpose is the justification for the exercise of the power of the State over unclaimed funds and is in our opinion sufficient to support the constitutionality of the statute

here involved (*Provident Savings Institution v. Malone, supra,* at p. 664).

We conclude that the statute was valid and that the decree, which was entered after the enactment of the statute, did not confer rights in conflict with the statute. Our decision in *Matter of Schmidt v. Chamberlain of N. Y.* (266 N. Y. 225) decided nothing to the contrary. It dealt with a different subdivision of the same section of the statute and did not decide that that subdivision impinged upon the jurisdiction of the Supreme Court, although the question was reserved.

It is urged that the amendment of section 44 of the State Finance Law in 1933 (L. 1933, ch. 217), providing that moneys paid into court and transferred to the State should be transferred to the general fund, shows that the Legislature recognized no obligation to keep such funds invested. The State also urges that the comptroller is a constitutional officer who has no power to invest funds in his keeping unless authorized by statute. We pass both of these considerations without comment because section 44 of the State Finance Law plainly governed the situation and was in terms a negation of any duty to keep such funds invested.

The courts below relied strongly upon *People v. Keenan* (110 App. Div. 537, affd. without opinion 185 N. Y. 600). In that case the City Chamberlain refused to pay over to the Treasurer of the State moneys paid into court and remaining unclaimed for over twenty years. A peremptory writ of mandamus was issued requiring him to pay over. His contention was that the statute was unconstitutional because, as he contended, it deprived the beneficiaries of their property without due process of law. He also contended that the act vacates and nullifies orders of the court. It was said in the Appellate Division that the transfer in nowise affected the right and title of the beneficiaries in the fund and could not nullify any order or decree of the court. It was not necessary for this court in affirming that decision to follow the language or the reasoning of the opinion of the Appellate Division. The City Chamberlain was in no position to question the constitutionality of the statute or to assert the rights of the claimants, if any, under the decrees which were entered when the funds were deposited in court.

The orders should be reversed and the motion denied, without costs. The question certified should be answered in the negative.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and DYE, JJ., concur; MEDALIE, J., taking no part.

Orders reversed, etc.